**UNITED STATES of America**

v.

**Frank P. GRIECO, Defendant.**

United States District Court
S. D. New York.
Feb. 5, 1960.

S. Hazard Gillespie, Jr., U. S. Atty. for the Southern District of New York, New York City, for United States. Otis

Pratt Pearsall, Asst. U. S. Atty., New York City, of counsel.

Fried & Mallman, New York City, for defendant. Elmer Fried, New York City, of counsel.

DIMOCK, District Judge.

Defendant, who is charged in an indictment with violation of section 1702 of title 18 U.S.Code, dealing with embezzlement of mail, makes three motions: (1) for an inspection of grand jury minutes and a consequent dismissal of the indictment, (2) for suppression of evidence and (3) for a bill of particulars.

### Motion for Inspection of Grand Jury Minutes and Dismissal of the Indictment.

 Defendant moves for an inspection of the grand jury minutes and a dismissal of the indictment on the ground that (a) insufficient evidence was presented to the grand jury and (b) violation of the cited law, section 1702 of title 18 U.S.Code, could not have been committed by anyone in this case.

The evidence which defendant says he believes to be in the possession of the Government would be sufficient on which to base an indictment under the liberal rule of United States v. Costello, 2 Cir., 221 F.2d 668, affirmed 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397.

Defendant's second point is based upon his belief that the addressee of the letter which was the subject of the charge was a fictitious person.

The provision of law charged to have been violated is section 1702 of title 18 U.S.Code which reads, as far as material, as follows:

"Whoever takes any letter * * which has been in any post office * * * before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence * * * or opens, secretes, embezzles, or destroys the same, shall be fined not more than

$2,000 or imprisoned not more than five years, or both."

The entire body of the indictment reads as follows:

"The Grand Jury Charges:

On or about the 1st day of July, 1959, in the Southern District of New York, FRANK P. GRIECO, the defendant, unlawfully, wilfully and knowingly, and with design to obstruct the correspondence, opened, secreted and embezzled a letter which had been in a Post Office and which was addressed to:

> Mr. Sam Gold
> Whitehall Hotel
> 100th St & Bway
> New York, N. Y. ʼ

before said letter had been delivered to the person to whom it was directed.

(Title 18, United States Code, Section 1702.)"

The statute makes opening, secreting or embezzling a letter unlawful only when done before it has been delivered to the person to whom it was directed, with design to obstruct "the" correspondence. The indictment accordingly charges that the letter was opened, secreted and embezzled with design to obstruct "the" correspondence.

 The statute contemplates the existence of correspondence—the sending of a letter to the addressee. Unless the defendant has a design to obstruct that correspondence—not correspondence in general but "the" correspondence—no crime has been committed. Defendant says that there is no such correspondence so no crime has been committed. The analogy sought to be drawn is evidently to the cases which hold that one who intends to receive stolen goods cannot be convicted of an attempt to receive stolen goods where the goods which he received actually were not stolen. See People v. Jaffe, 185 N.Y. 497, 78 N.E. 169, 9 L.R.A.,N.S., 263. Those cases hold that

where one has accomplished everything that he tried to do without committing a crime he cannot be convicted of an attempt simply because he thought that he was committing the crime. Judge Willard Bartlett in the Jaffe opinion puts the cases of a young man who casts his vote under the belief that he is under twenty-one and disqualified but has actually attained his majority and of one who has sexual intercourse with a girl whom he believes to be under the age of consent when she is actually over it.

■ I think that the case of a fictitious addressee here would be different, however. What the defendant is charged with is intent, not an attempt. I think that one can have a "design" to obstruct a non-existent correspondence. While it might be a logical absurdity to say that one "attempted" to obstruct a certain correspondence which turned out not to exist I see no such absurdity in saying that one had a "design" to obstruct a certain correspondence which turned out not to exist. An attempt involves acts but a "design" is a mere state of mind.

This is illustrated by the cases which hold that one may be guilty of breaking and entering with intent to steal even though there is nothing in the building. In State v. Beal, 37 Ohio St. 108, the indictment charged that the defendant entered a warehouse of William Houts "with intent * * * to steal * * * the personal goods, chattels and property of the said William Houts". The Supreme Court of Ohio sustained the state's exception to a charge that, if the defendant entered the warehouse with intent to steal money of Houts which he supposed to be in a safe there and there was no money there, he should be acquitted. See also State v. Golden, 86 Minn. 206, 90 N.W. 398, and cases cited.

■ There is the possible distinction between those cases and the case at bar

in that the statute here, by the use of the word "the", contemplates a design to obstruct a particular correspondence. I have already held that one may have a design to obstruct a particular correspondence even if there is no such correspondence. It is conceivable, however, that Congress intended to require as an ingredient of the crime not only the actor's design to obstruct a particular correspondence but also the actual obstruction of a particular correspondence. The catchline of the section, "Obstruction of correspondence", might lend some color to this theory but section 19 of the act adopting title 18 U.S.Code * provides that no inference of a legislative construction is to be drawn by reason of any such catchline. I think that if Congress had wished to require actual obstruction of correspondence the statute would have been cast in a form which defined the crime as obstruction by taking a letter rather than as taking a letter with design to obstruct.

Since the crime could have been committed even if the addressee was fictitious, proof that the grand jury had that information before it would avail defendant nothing.

Defendant's motion for inspection of the grand jury minutes and a dismissal of the indictment is denied.

## Motion to Suppress Evidence.

Defendant moves also that two allegedly marked dollar bills which were taken from him, any other material which was taken from him and verbal statements which were made by him be suppressed upon the ground that the bills were seized from his person without warrant and that the statements were made while he was in fear and under duress during illegal detention.

Accepting for present purposes defendant's story, he was forcibly detained by an Investigative Aide of the Post Office Department. He says that he was

* 80th Cong., 2d Sess., Ch. 645, June 25, 1948, 62 Stat. 638, 862, 18 U.S.C. note preceding section 1.

in great fear and apprehension and under that influence made statements to the Investigative Aide. He does not, however, claim that the officials obtained a confession from him. Indeed he says that he told the Investigative Aide that he was being framed. He was then taken by the Investigative Aide to a Postal Inspector and, at the Postal Inspector's direction, he emptied his pockets and surrendered two one-dollar bills and perhaps other material.

█ The Government says that there was no search; that the dollar bills were surrendered voluntarily. Defendant has a different story and asks for a hearing to resolve the question of fact. The Government counters by saying that, even if defendant's story is accepted, there was still no unlawful search and that therefore no hearing is necessary. I must therefore consider defendant's story and decide whether, on it, there was an illegal search.

Defendant says that he was arrested by an Investigative Aide of the Post Office Department in a shoemaker's store and taken to the hotel where he worked and that there a Postal Inspector forced him to surrender the dollar bills. The Government makes no attempt to justify a search by the Investigative Aide but does say that an arrest by the Postal Inspector would have been lawful and that therefore the assumed search by him was lawful. This is a non sequitur. There is no rule of law that, after a man has been taken into custody, any officer who could lawfully have arrested him before he was taken into custody can lawfully search him afterwards.

If a hearing should disclose that there was an arrest by the Investigative Aide and a search by the Postal Inspector, defendant would be entitled to suppression of the two marked dollar bills. The decision of the question whether the search was still unlawful even if there was an arrest by the Postal Inspector instead of by the Investigative Aide can await a determination of the question whether the arrest was made by the Investigative Aide.

Counsel will please arrange with my chambers for a time and place of hearing.

With respect to the oral statements alleged to have been made to the Investigative Aide, defendant does not, on his own story, make a case for a hearing. There is no claim that they were extorted or that any improper methods of investigation were used. For all that appears defendant experienced nothing more than the anxiety which would naturally result from an arrest. He was promptly brought before the United States Commissioner so that there is no basis for suppression of his statements under the rule of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Hence the hearing will not concern itself with the plea that the oral statements be suppressed.

Motion for suppression of oral statements denied. Hearing to be held on question of suppression of materials taken from defendant.

So ordered.

Motion for a Bill of Particulars.

Defendant moves for nine categories of particulars as to the indictment. These fall generally into two classes: amplification of allegations of the indictment and information on the question whether the address was fictitious.

The latter class of particulars, those concerned with the question whether the addressee was fictitious, would deal with a subject which I have held above to be immaterial and will therefore not be required.

█ The Government's objections to the remainder of the requests are based principally upon the mistaken notion that a motion for a bill of particulars is a device for discovery so that possession by defendant of information as to the facts would be a reason for denial. As Judge [now Justice] Whittaker said in

United States v. Smith, D.C.W.D.Mo., 16 F.R.D. 372, 375:

"Nor is it any answer to a motion for a bill of particulars for the government to say: 'The defendant knows what he did, and, therefore, has all the information necessary.' This argument could be valid only if the defendant be *presumed to be guilty*. * * * Being presumed to be innocent, it must be assumed 'that he is ignorant of the facts on which the pleader founds his charges.'"

In accordance with what I have said the Government must answer defendant's requests 1, 2, 3, so much of 5 as asks "where it was placed in the mail, which Post Office had the letter been in", 6, 7, 8 and 9 except that descriptions may be substituted for copies of any paper money. The rest of the requests need not be answered.

So ordered.